GARWOOD, Circuit Judge:
 

 This is an appeal from a decision of the United States Bankruptcy Court for the Western District of Texas which overruled a judgment creditor’s objection to appel-lee’s claim of homestead exemption in a Chapter 11 bankruptcy proceeding. We reverse, holding that the property was not appellee’s homestead when the creditor’s judgment lien was perfected against it.
 

 FACTS AND PROCEEDINGS BELOW
 

 In August 1977, appellee Janis Armstrong (now Janis Claflin) purchased a townhome in Houston (Houston Property) while separated from her previous husband. She lived there with her three minor children claiming it as her homestead. In April 1978, the Houston Property was awarded to her as her separate property in a divorce decree. She continued to occupy the Houston Property with her children. In April 1980, she moved to Austin, Texas to live with David Claflin in a townhome (Austin Property) which he owned and claimed as his homestead. In August 1980, she married David Claflin, and they, eventually joined by her children, continued to live in the Austin Property, for which Janis Claflin evidently paid one half of all costs. The Houston Property was leased and occupied by unrelated persons during this time.
 

 Janis and David Claflin both pursued professional careers in Austin. Janis Claf-lin had maintained a practice as a psychotherapist in Houston for ten years. In 1980, she began seeing patients in Austin and has testified that by December 1980 she had moved her practice to Austin on a full-time basis' though she returned to Houston approximately once a week as a consultant on retainer for a foundation. She maintained an office in Austin and also worked under a management contract with a large corporation there. She has also founded an active organization in Austin,
 
 *1090
 
 the Austin Center for Attitudinal Healing. David Claflin, an attorney, specialized in utilities law and practiced primarily before the Texas Public Utilities Commission in Austin.
 

 In March 1981, Janis Claflin contracted with appellant Hillock Homes to purchase a house in Austin and put her Houston Property on the market. The contract to purchase the house in Austin was never consummated and was the subject of a lawsuit in Texas state court in which, on March 15, 1982, Hillock Homes secured a judgment against Janis Claflin for specific enforcement of the contract. On March 16, 1982, an abstract of that judgment was filed in both Travis (Austin) and Harris (Houston) Counties. This judgment was subsequently affirmed by the Texas Court of Appeals.
 
 Claflin v. Hillock Homes, Inc.,
 
 645 S.W.2d 629 (Tex.App.—Austin 1983). Pursuant to this judgment, Hillock Homes had a judgment for the sales price of the house and Janis Claflin had title to the house subject to a lien to secure payment of the judgment so that if the judgment were not paid by August 29,1982, Hillock Homes could foreclose on the house. This lien was subsequently foreclosed with a resulting deficiency of over $80,000 in the amount of the judgment. It is the judgment in that suit which Hillock Homes is seeking to enforce against the Houston Property of Janis Claflin.
 

 In June 1982, the Claflin family moved to rental property in Austin though David Claflin still owns the Austin townhome. On July 9, 1982, Janis Claflin filed a Chapter 11 petition in bankruptcy claiming her Houston Property as her homestead in the schedule of exempt property. Hillock Homes objected to the homestead claim and filed a Complaint for Relief from Stay seeking permission to foreclose its judgment lien against the Houston Property. Following a hearing, the Bankruptcy Court held that the Houston townhome did constitute the homestead of Janis Claflin and overruled Hillock’s objection to her homestead claim. For the reasons stated below we reverse.
 

 DISCUSSION
 

 The Bankruptcy Court held that the Houston Property was the homestead of the Claflin family and therefore the exempt property of the debtor Janis Claflin. This conclusion was based on statements of Janis and David Claflin that they had agreed that the Houston Property would remain the separate property of Janis Claflin and would serve as the homestead for the family either to be lived in by the family in Houston or to be sold and the homestead transferred to new property (also to be the separate property of Janis Claflin) in Austin. The Bankruptcy Court stated that the facts indicated that the couple was attempting to do the latter.
 

 Janis Claflin is claiming a homestead exemption under the laws of the State of Texas. The Constitution and statutes of Texas extend homestead protection to a family or to a single adult person. Tex. Const, art. 16, § 50; Tex.Rev.Civ.Stat.Ann. art. 3833 (Vernon 1966) (now recodified at Tex.Prop.Code Ann. § 41.001 (Vernon 1984)). Thus, Janis Armstrong had a valid claim of homestead in the Houston Property which she owned and occupied as a single adult. However, once she married, she could no longer claim homestead as a single adult. She and David Claflin established the Claflin family, and the question became: Where has the Claflin family designated a homestead? For, as the Texas Supreme Court has stated in a similar case, “after the new family was created by her remarriage, there was no homestead apart from that new family.”
 
 Burk Royalty v. Riley,
 
 475 S.W.2d 566, 567 (Tex.1972).
 
 [1]
 

 
 *1091
 
 There is no evidence that the Claflin family established a homestead in the Houston Property. In determining where the Claflin family established a homestead, we start with the proposition that Janis Claflin cannot show the existence of a homestead for the Claflin family by showing the existence of the prior homestead of Janis Armstrong as a single adult person.
 
 Cf. Burk Royalty, supra
 
 at 568 (cannot prove homestead for Riley family by showing prior existence of homestead of Harris family). Furthermore, the purpose of homestead exemption laws is to protect the possession and enjoyment of the individual in property which is used as his or her home. Texas law reflects this purpose by defining homestead property as property used as a home. Tex. Const, art. 16, § 51; Tex.Rev.Civ.Stat.Ann. art. 3833 (Vernon 1966) (now recodified at Tex.Prop.Code Ann. § 41.001 (Vernon 1984)). Neither the Claflin family nor any of its members has used or occupied the Houston Property as a home or made any firm or concrete plans to do so. Vague plans possibly to do so in the future (or to establish a totally different homestead in Austin) should not control over the Claflin family’s actual use and occupancy as the (and the only) family home of property owned by one of the spouses.
 
 See Burk Royalty, supra
 
 at 567;
 
 In re Cumpton
 
 30 B.R. 49, 51 (N.D.Tex. 1983).
 

 Moreover, a subjective intent to make property a homestead in the future must generally be evidenced by overt acts of preparation.
 
 Cheswick v. Freeman,
 
 155 Tex. 372, 376, 287 S.W.2d 171, 173 (Tex. 1956). Here, the parties asserted only a contingent future intent to move to the Houston Property if Janis Claflin could not establish herself professionally in Austin. She has been professionally successful in Austin, and all her overt actions indicate an intention to remain in Austin. After her marriage to David Claflin, Janis never lived in the Houston Property, but only in the Austin Property. There was no overt act of preparation evidencing a purpose to make the Houston Property the Claflin home within a reasonable time.
 
 Burk Royalty, supra
 
 at 569. If the vague, contingent and subjective intent of the spouses could control the designation of a homestead contrary to their actual use and occupancy as the (and the only) family home of other property owned by one or both of them, it would be impossible for anyone to know when a homestead claim might be valid.
 

 The Bankruptcy Court did not follow the Texas Supreme Court decision in
 
 Burk Royalty
 
 because that opinion stated a presumption that when a husband and wife are living together the husband is the head of the household and therefore determines the homestead,
 
 Burk Royalty, supra
 
 at 568, although the court did acknowledge that a wife can designate a family homestead in certain circumstances.
 
 Id.
 
 at 569. It was the opinion of the Bankruptcy Court that “such a presumption would in this day and age fly in the face of the Equal Rights Amendment to the Texas Constitution and the Equal Protection Clause of the United States Constitution, [citing
 
 Orr v. Orr,
 
 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979) (invalidating state statutory scheme under which husbands but not wives were required to pay alimony)], and therefore, can not stand.”
 

 However, we do not apply that presumption to determine that the Claflin family had established a homestead in the Austin Property
 
 [2]
 
 rather than the Houston
 
 *1092
 
 Property, because no member of the Claflin family — neither husband nor wife — has established the Houston Property as the Claf-lin family homestead, and both have designated the Austin Property, owned by the husband, as the Claflin family homestead by their actual use and occupancy of it, and it alone, as the family home. Janis Claf-lin’s newly acquired homestead rights in the Austin Property as a constituent member of the Claflin family are incompatible with an assertion of homestead rights in the Austin Property as a constituent member of the Claflin family are incompatible with an assertion of homestead rights in the Houston Property as “[t]he wife cannot have one homestead and the husband another.”
 
 Crowder v. Union National Bank,
 
 114 Tex. 34, 39, 261 S.W. 375, 377 (1924);
 
 In re Cumpton, supra
 
 at 51. The Austin Property was where Janis and David Claflin each actually resided and lived together as husband and wife, neither residing elsewhere, and it was owned by one of them; therefore, neither the status of that property as their family homestead, nor Janis’ homestead rights in it, depends on which spouse owned the property, since “the homestead may be the separate property of either the husband or wife, or community property.”
 
 Crowder, supra
 
 261 S.W. at 377.
 

 Appellees contend and the Bankruptcy Court further held that because Janis Claflin had a valid claim of homestead in the Houston Property as Janis Armstrong before her remarriage and because her statements regarding her intention to move to Austin to live permanently with her new husband did not meet the heavy burden of proving abandonment of an existing homestead — moving away with an intent not to return — which is presumed to continue absent such proof, Janis Claflin had a valid claim of homestead in the Houston Property. But, the Texas Supreme Court in
 
 Burk Royalty
 
 reversed the Court of Civil Appeals, which had analyzed this type of situation as an abandonment question, and pointed out that it is presumed that a homestead continues absent proof of abandonment only if the existence of the homestead is first proved.
 
 [3]
 
 Like the family created by the remarriage in
 
 Burk Royalty,
 
 the Claflin family, never proved the existence of a homestead in the Houston Property. Since Janis Claflin was no longer a single person and the Claflin family was the only family to which she then belonged, “her intent to claim or abandon a homestead for herself was no longer decisive.”
 
 Burk Royalty, supra
 
 at 568.
 
 [4]
 

 
 *1093
 
 For the foregoing reasons we hold that the Houston Property was not Janis Claflin’s homestead at the only relevant time, March 16, 1982. The contrary decision of the Bankruptcy Court is accordingly reversed.
 

 REVERSED.
 

 [1]
 

 . In that case, George and Billie Rae Harris were married and had a family. In 1952, they owned and occupied a homestead on Leggett Drive in Abilene, Texas. The Burk Royalty Company obtained a judgment against Mr. Harris and filed the abstract for record in 1959. George and Billie Rae Harris were divorced in 1963. The divorce decree awarded her a one-half interest in the Leggett Drive home and use and occupancy of the home so long as she did not remarry. Soon afterwards, she married James Riley, and she and the children com
 
 *1091
 
 menced to live with Mr. Riley in the home he owned. She did not occupy the Leggett Drive property after her marriage to Mr. Riley and James Riley never occupied it. Mr. Harris instituted suit to remove the cloud of the judgment lien from the Leggett Drive property, implead-ing Mrs. Riley. At trial Mrs. Riley claimed her interest in the property to be exempt from foreclosure because her former homestead protection continued. The Texas Supreme Court held that Mrs. Riley had no homestead exemption in the Leggett Drive property.
 
 Burk Royalty v. Riley,
 
 475 S.W.2d 566 (Tex.1972).
 

 [2]
 

 . The fact that the Claflin family moved to rented property in Austin just prior to Janis Claflin's filing of her bankruptcy petition does not affect this analysis. This move did not occur until more than two months after appellant’s judgment was abstracted and its lien perfected.
 
 *1092
 
 Tex.Rev.Civ.Stat.Ann. art. 5449 (Vernon 1958).
 
 See also Glasscock v. Stringer,
 
 33 S.W. 677 (Tex. Civ.App.1896).
 

 [3]
 

 . Though abandonment need not determine the outcome of this case, abandonment of an old homestead may be established by proof that a ■ new home is acquired, and acquisition of a new homestead establishes abandonment of the old as a matter of law.
 
 See Norman v. First Bank & Trust, Bryan,
 
 557 S.W.2d 797, 801 (Tex.Civ.App.—Houston [1st Dist.] 1977, writ ref’d n.r.e.);
 
 In re Cumpton,
 
 30 B.R. 49, 51 (N.D.Tex.1983).
 

 [4]
 

 . Moreover, it is doubtful that the case on which appellees heavily rely in arguing that no abandonment occurred,
 
 Gulf Production Company v. Continental Oil Company,
 
 132 S.W.2d 553 (Tex.1939),
 
 reh'g,
 
 139 Tex. 183, 164 S.W.2d 488 (Tex.1942) (superseding decision renders question of abandonment immaterial), would compel a different decision under an abandonment analysis. In that case, the court was not attempting to choose between two homestead locations but rather to determine whether the only homestead an elderly couple had ever claimed had been abandoned. The court pointed out that, although the elderly couple had moved from the property because of illness and their enfeebled condition and were living in the homes of their children, where they could have no homestead rights, they still considered the property in question to be their home, kept all their personal belongings there, and returned for visits as often and for as long as possible. Therefore, because they never intended to abandon the property by leaving and not returning, because their leaving was not voluntary but from necessity, because they continued to use the old home in the only way their age and the state of their health permitted, and because they had not established a new homestead, and could not do so in their children’s homes, there was no abandonment of their old homestead.
 

 Here, Janis Claflin voluntarily left her home in Houston and no longer occupied it. Although she may not initially have had a definite intention not to return, since the decision depended on her success in establishing herself professionally in Austin and the success of her marriage, the evidence demonstrates that she
 
 *1093
 

 did
 
 succeed in professionally establishing herself in Austin and that her marriage (so far as reflected by the evidence) was successful. Further, her overt actions reflected both an intention to settle in Austin and her actual use and occupancy with her husband as their family home of the property of her husband, no other property having ever been so used or occupied.