**Kelly P. BRADLEY**

v.

**PACIFIC SOUTHWEST BANK, F.S.B.**

**Civ. A. No. 4–89–541–E.**

United States District Court, N.D. Texas, Fort Worth Division.

Nov. 26, 1990.

**308**

H. DeWayne Hale, J. Mark Chevallier, Hale Spencer Stanley & Trust, Dallas, Tex., for plaintiff.

Larry F. Amerine, Susan Foster, Biggers Beasley Amerine & Earle, Dallas, Tex., for defendant.

## MEMORANDUM OPINION AND ORDER

MAHON, District Judge.

This is an appeal from an order in an adversary proceeding in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division, the Honorable Massie Tillman, presiding. The adversary proceeding involved a complaint to determine the validity of a lien and for equitable subordination. By order of December 12, 1988, the Bankruptcy Court held that the appellant debtor's property, known as Paigebrooke Farms, was rural homestead property and that the debtor was entitled to claim fifteen acres as her rural homestead under existing Texas law. On December 15, 1988, appellant filed a motion to alter or amend judgment, which was denied on December 27, 1988. On December 22, 1988, appellee filed a motion to amend findings of fact and conclusions of law. The Bankruptcy Judge thereafter entered supplemental findings of fact and conclusions of law on December 27, 1988. On January 10, 1989, the appellant simultaneously filed a notice of appeal and a motion for a new trial. The order denying motion for new trial was entered June 9, 1989. Subsequently, on June 16, 1989, ap-

pellant filed her second notice of appeal. Thereafter, on June 23, 1989, appellant filed her "Amended Notice of Appeal."

On June 22, 1990, this Court ordered further briefing by the parties on the jurisdiction of this Court to hear the appeal. First, the Court requested the parties to brief whether the order of the Bankruptcy Judge was a final order or merely an interlocutory order. Secondly, the Court requested further briefing on whether the motion to alter or amend judgment tolled the time for presenting the motion for new trial. The parties have timely submitted their briefs on these issues. After a thorough review of the briefs, the record, and applicable law, the Court makes the following determination.

### A. Jurisdiction

■ On December 12, 1988, the Bankruptcy Court disposed of Count 1 of appellant's complaint in its order directing that appellant's rural homestead was limited to the fifteen-acre tract located in the center of the subject property. The Bankruptcy Court likewise disposed of Count II of appellant's complaint in its December 13, 1988 order of non-suit of Count II. Because appellee prevailed on Count I and retained its deed of trust lien on the property, the appellee's counterclaim to deny the discharge of appellant's debt was rendered moot. Accordingly, the Bankruptcy Court has disposed of all issues in this suit, and the December 12, 1988 order was a final order and appealable.

■ Bankruptcy Rule 8002(a) required appellant to file her notice of appeal within ten days after the entry of the December 12, 1988 order of the Bankruptcy Court.[1] From the record, the Court finds that the appellant failed to do so. However, appellee's timely filing of a motion to amend findings of fact and conclusions of law pursuant to Fed.R.Civ.P.Rule 52 on December 22, 1988, effectively tolled the ten-day period for appellant to file her notice of appeal. Bankruptcy Rule 8002(b) provides *inter alia* that "if a timely motion is filed

---

1. Bankruptcy Rule 8002(a) states *inter alia* that "the notice of appeal shall be filed with the clerk within 10 days of the date of the entry of the judgment, order, or decree appealed from."

by any party ... under Rule 7052(b)[2] to amend or make additional findings of fact, whether or not an alteration of the judgment would be required if the motion is granted, ... the time for appeal for all parties shall run from the entry of the order ... granting or denying any ... such motion." Because the Appellee timely filed a Rule 7052(b) motion to amend findings of fact and conclusions of law, the Court finds that appellee's motion tolled the time for filing the notice of appeal until such time as the Bankruptcy Court entered its supplemental findings of fact and conclusions of law on December 27, 1988.

■■■ Thereafter, on January 10, 1989, appellant timely filed a notice of appeal[3] and simultaneously filed a motion for new trial under Fed.R.Civ.P.Rules 59 and 60. Fed.R.Civ.P.Rule 59(b) provides that a motion for new trial under Rule 59 must be served no later than ten days after the entry of judgment.[4] The Court finds that because appellant's motion for new trial was not served within ten days of the December 12, 1988 order of the Bankruptcy Court, appellant's motion for new trial was untimely and therefore did not render the notice of appeal ineffective pursuant to Bankruptcy Rule 8002(b).[5] Further, the Court finds that appellant's intervening motion to alter or amend judgment filed on December 15, 1988, did not toll the time for filing the motion for new trial. Therefore, the Court concludes that appellant's untimely motion for new trial had no effect on appellant's original notice of appeal.

In sum, the appellant has properly noticed this appeal based on the following reasons: (1) appellee's timely motion to amend findings of fact and conclusions of law tolled the time period for filing a notice of appeal; (2) appellant, thereafter, timely noticed her appeal on January 10, 1989; and (3) appellant's motion for new trial was untimely and therefore had no effect on the appellant's original notice of appeal. Based on the foregoing, the Court concludes that the appellant has properly noticed her appeal and therefore the Court has jurisdiction to entertain this bankruptcy appeal pursuant to 28 U.S.C. §§ 158(a) and 1334.

### B. *Factual Summary*

■■■ This is an appeal from a final order of the Bankruptcy Judge rendered pursuant to the provisions of 28 U.S.C. § 157 and presents questions of fact and law. While questions of fact will not be overturned unless clearly erroneous, the Court will review, *de novo*, the questions of law. *In re Texas Research, Inc.*, 862 F.2d 1161 (1989); *In re Consolidated Bancshares, Inc.*, 785 F.2d 1249 (5th Cir.1986). For clarity purposes, the Court will indulge in a brief summary of the underlying facts as stated in the Bankruptcy Court's findings of fact.

The appellant, Kelly P. Bradley, along with her husband, Scott Bradley, who is a practicing attorney, own several tracts of land in the north Texas area. One of the tracts, which is the subject of this appeal, is called "Paigebrooke Farm" and consists of approximately 129.47 acres of rural property within the Town of Westlake, Texas. Appellant and her husband initially acquired the 129.47 acres through a partnership agreement entered into on December 30, 1977. The agreement provided that appellant would segregate and occupy as

---

**2.** Bankruptcy Rule 7052 incorporates by reference Fed.R.Civ.P. Rule 52.

**3.** December 27, 1988 through January 10, 1989 is actually fourteen calendar days. However, when calculating the ten-day period for filing a notice of appeal prescribed by Bankruptcy Rule 8002(a), Bankruptcy Rule 9006(a) directs that if the period of time is less than 11 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation. Bankruptcy Rule 9006(a) (1987) (amended 1989). As a result, two Saturdays and two Sundays, making a total of four days, are excluded from the computation.

**4.** Under Bankruptcy Rule 8002(b), a motion for new trial filed pursuant to Fed.R.Civ.P. Rule 60 (as incorporated by reference in Bankruptcy Rule 9024) does not affect the filing of a notice of appeal. Therefore, the Court will only consider what effect, if any, appellant's motion for new trial had under Fed.R.Civ.P. Rule 59 as it relates to the notice of appeal.

**5.** Under Bankruptcy Rule 8002(b), a notice of appeal filed before the disposition of a *timely* Rule 9023 motion for new trial has no effect and a new notice of appeal must be filed.

her homestead 15 acres of land situated in the center of the 129.47 acre tract. The agreement further provided that the remaining 114.47 acres would be used for investment and development purposes. Since March 1, 1978, the appellant used the Paigebrooke Farm as her family home, and in accordance with the partnership agreement, maintained the curtilage of the family home and out buildings within the 15 acre tract located approximately in the center of the Paigebrooke Farm. In 1982, the partnership was terminated and the appellant subsequently purchased the other partners' interest and became the sole owner of the Paigebrooke Farm. The physical characteristics of Paigebrooke Farm, however, remained essentially the same, except for some improvements to the buildings on the site.[6]

In August 1985, the appellant and her spouse, Scott Bradley, entered into a loan transaction with Seguin Savings Association, predecessor-in-interest to Pacific Southwest Bank, F.S.B. (hereinafter "Seguin"). Pursuant to the loan agreement, Seguin agreed to loan to the appellant and her husband a sum in excess of $5,000,-000.00. The primary collateral for the loan was a real estate development project consisting of approximately 200 acres of undeveloped real estate near Roanoke, Texas, together with the improvements to be constructed thereon with loan proceeds. In addition, the appellant and her spouse pledged the Paigebrooke Farm as secondary collateral for the loan pursuant to a third lien deed of trust executed in favor of Seguin. The parties, however, excepted from this third lien deed of trust some 15 acres of land which included and surrounded the appellant's actual home site on the Paigebrooke Farm. Additionally, the appellant and her husband executed and issued to Seguin on August 30, 1985, a homestead disclaimer wherein they expressed their intention to use only the 15 acres including and surrounding their home and farm buildings as their homestead.

On October 6, 1987, the appellant filed a voluntary petition for bankruptcy under Chapter 11 of the Bankruptcy Code, in part because Seguin posted the real estate development project and Paigebrooke Farm for foreclosure. Appellant filed schedules and statement of affairs in connection with the bankruptcy filing wherein she claimed the Paigebrooke Farm as her homestead; however, the appellant's exemption of the Paigebrooke Farm contained in the schedules and statement of affairs was not objected to by any party.

On December 31, 1987, the underlying adversary proceeding was commenced by appellant's filing of a complaint to determine the validity of a lien and for equitable subordination. After the completion of the proceedings below, the Bankruptcy Court entered an order in conformity with the findings of fact and conclusions of law on December 12, 1988. The order concluded that the Paigebrooke Farm was rural in character and that the appellant never alienated nor abandoned her homestead rights to the property. The order further provided that the appellant was entitled to claim fifteen acres of land as her rural homestead under existing Texas law. The Bankruptcy Court subsequently entered an order for clarification purposes supplementing the original findings of fact and conclusions of law on December 27, 1988.

### C. *Issues on Appeal*

■ The central issue raised by the appellant in her assignment of error is whether the Bankruptcy Court erred in limiting

---

**6.** In his findings of fact, Judge Tillman commented on the physical characteristics of the appellant's property which the Court sets forth as follows:

> The improvements on Paigebrooke Farm include Debtor's house, a small foreman's house, an eight-stall horse stable with a tack and feed room, two storage sheds, another storage shed for hay, a chicken coop, two corrals and a chute for working cattle. Debtor's house is a ranch style dwelling. The perimeter of the farm is fenced in barbed wire, and there are three cattle guards installed in the ground. All gates on the property are of the type typically sold in farm and ranch stores. It is necessary to open a gate to enter into the property. The driveway from the road adjoining Paigebrooke Farm to the Debtor's house is more than a third of a mile in length and is unpaved. Findings of Fact p. 3.

the appellant's rural homestead to the fifteen acres including and surrounding the appellant's dwelling. Specifically, appellant cites as error the Bankruptcy Court's findings of fact Nos. 40 and 59 in its findings of fact and conclusions of law where the Bankruptcy Court limited the appellant's homestead to 15 acres. Further, appellant asserts that the Bankruptcy Court erred in reaching findings of fact Nos. 60 through 64 in its supplemental findings of fact and conclusions of law by finding that appellant and her husband intended to use only 15 acres as their homestead. In addition, appellant contends that the Bankruptcy Court erred in making supplemental conclusions of law Nos. XIII and XIV.

As a threshold question, the Court must determine whether the Bankruptcy Court's finding of fact concerning the 15 acres of land said to contain the appellant's dwelling and out buildings was clearly erroneous.[7] A district court must affirm findings of the bankruptcy court unless they are clearly erroneous. *In re Texas Research, Inc., supra.* "The test for the district court ... is not whether a different result would be appropriate, but whether there is sufficient evidence in the record to prevent clear error in the trial judge's findings." *In re Bardwell,* 610 F.2d 228 (5th Cir.1980); *see also* Bankruptcy Rule 8013.

■ In his findings of fact and conclusions of law and his supplemental findings of fact and conclusions of law, the Bankruptcy Judge found from the evidence that appellant's household and household effects were situated within a tract of land approximately fifteen (15) acres in size. The Court has carefully reviewed the transcript and the evidence of the proceedings below and has determined that the Bankruptcy Court could properly conclude from the evidence that the appellant's home and out buildings were located within the fifteen acre tract which the Bankruptcy Judge found to be appellant's homestead. Before the Bankruptcy Court was uncontroverted evidence showing that not only

her home, but appellant's horse stables, storage sheds, corrals, and various other out buildings and improvements were all situated within the 15 acre perimeter surrounding and including appellant's homestead. While there was evidence presented that appellant maintained a hay meadow on approximately 17 acres of the Paigebrooke Farm and appellant's livestock were allowed to graze on the entire tract, there was not one scintilla of evidence before the Bankruptcy Court indicating that appellant's household or household effects extended beyond the 15 acre tract surrounding and including appellant's dwelling. Based upon the evidence as set forth above, the Court finds that there was sufficient evidence to support the Bankruptcy Court's factual finding that appellant's household and household effects were situated within a tract of land approximately fifteen acres in size. In so doing, the Court accepts the above factual finding of the Bankruptcy Court as not clearly erroneous.

■ The next issue raised by the appellant is whether the Bankruptcy Court erred in finding that the remaining 114.47 acres surrounding the 15 acre tract was vacant development property. While there is no evidence that commercial or residential development has occurred on Paigebrooke Farm since the appellant acquired the property in 1982, there is sufficient evidence to support the Bankruptcy Court's finding that the 114.47 acres was vacant development property. Appellant and her husband initially acquired the property through a partnership agreement ostensibly created to market and develop the property for residential and/or commercial use. During the years following their acquisition of the Paigebrooke Farm, appellant and her husband took various steps to market the property for residential and/or commercial development including letters to prospective buyers advertising the property as "a major corporate headquarters campus," engaging an engineering firm to formulate

---

7. This point of error combines two identical findings made by the Bankruptcy Judge in No. 40 of his findings of fact and conclusions of law and No. 60 of his supplemental findings of fact and conclusions of law.

plans for the development of the property into residential estates, and other substantive measures taken by the appellant and her husband to develop the property commercially. Although there was no evidence before the Bankruptcy Court that the appellant and her husband intended to farm the 114.47 acres in any significant way,[8] there was ample evidence to support the Bankruptcy Court's finding that the appellant and her husband sought to develop as residential and/or commercial property the outlying acres of the Paigebrooke Farm. Therefore, the Bankruptcy Court's finding shall not be set aside as clearly erroneous.

 The third point of error the appellant raises on this appeal is whether the Bankruptcy Court erred in finding that the appellant and her husband intended to occupy only 15 acres of the 129.47 acres as their homestead as reflected by their consistent written statements and by their actual use of only 15 acres. Before the Court reaches the merits of this issue, it would be appropriate to review Texas law as it applies to the appellant's homestead rights. As a general rule, bankruptcy courts resort to state law for interpretation of state homestead exemption rights. *In re Moody*, 77 B.R. 580, 590 (S.D.Tex.1987), *aff'd*, 862 F.2d 1194 (5th Cir.1989); *In re Barnhart*, 47 B.R. 277 (N.D.Tex.1985). In Texas, the state constitution and statutes have clearly established homestead exemption rights as a unique enclave to protect an individual's possession and enjoyment in property which is used as his or her home. *United States v. Rodgers*, 461 U.S. 677, 686, 103 S.Ct. 2132, 2138, 76 L.Ed.2d 236 (1983); *In re Claflin*, 761 F.2d 1088 (5th Cir.1985); *see generally* McKnight, *Homestead: Designation and Extent*, 36 Sw.L.J. 121 (1982). The homestead right is not a mere statutory entitlement, but a vested property right. *Williams v. Williams*, 569 S.W.2d 867 (Tex.1978).

Because protection of homestead rights is fundamental policy of Texas law, homestead exemption has commanded unusual deference. *In re Moody, supra; In re Claflin, supra.* For that reason, Texas courts have historically given a liberal construction to the state constitution and statutes protecting homestead exemptions. *Tollman v. Overstreet*, 590 S.W.2d 635, 637 (Tex.Civ.App.—Tyler 1979, no writ); *see also Woods v. Alvarado State Bank*, 118 Tex. 586, 19 S.W.2d 35 (1929).

 The state constitution and statutes provide that one may claim as homestead property not more than one acre of urban property or in the case of rural property not more than 200 acres. Tex.Const.Ann. art. 16 § 51; Tex.Prop.Code Ann. § 41.002 (Vernon Supp.1990).[9] It is well settled in

---

8. The Bankruptcy Court found that farming and cattle operations on the Paigebrooke Farm have resulted in some small financial rewards for the appellant and her husband; however, for the most part, these activities have resulted in losses for tax purposes.

9. The Court has reviewed the applicable constitutional and statutory provisions protecting the homestead. The Texas Constitution provides:

The homestead, not in a town or city, shall consist of not more than two hundred acres of land, which may be in one or more parcels, with the improvements thereon; the homestead in a city, town or village, shall consist of lot or lots amounting to not more than one acre of land, together with any improvements on the land; provided, that the same shall be used for the purposes of a home, or as a place to exercise the calling or business of the homestead claimant, whether a single adult person, or the head of a family; provided also, that any temporary renting of the homestead shall not change the character of the

same, when no other homestead has been acquired.

Tex.Const. art. XVI § 51. In accordance with the constitutional provision, the Texas Property Code further clarifies the definition of homestead and states as follows:

(a) If used for the purposes of an urban home or as a place to exercise a calling or business in the same urban area, the homestead of a family or a single, adult person, not otherwise entitled to a homestead, shall consist of not more than one acre of land which may be in one or more lots, together with any improvements thereon.

(b) If used for the purposes of a rural home, the homestead shall consist of:

(1) for a family, not more than 200 acres, which may be in one or more parcels, with the improvements thereon; or

(2) for a single, adult person, not otherwise entitled to a homestead, not more than 100 acres, which may be in one or more parcels, with the improvements thereon.

(c) A homestead is considered to be rural if, at the time the designation is made, the prop-

Texas that the claimant has the burden to establish the character of the property as homestead by showing a combination of both overt acts of homestead usage and the intention on the part of the owner to claim the land as a homestead. *Lifemark Corp. v. Merritt*, 655 S.W.2d 310, 314 (Tex.App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.); *Prince v. North State Bank of Amarillo*, 484 S.W.2d 405, 409 (Tex.Civ.App.—Amarillo 1972, writ ref'd n.r.e.). Texas courts have held that "homestead usage" means that the property was used for purposes of the home, *Fajkus v. First Nat'l Bank of Giddings*, 735 S.W.2d 882, 884 (Tex.App.—Austin 1987, writ denied); *Sims v. Beeson*, 545 S.W.2d 262, 263 (Tex.Civ.App.—Tyler 1977, writ ref'd n.r.e.), and that actual use of the land as a homestead is the most satisfactory and convincing evidence of intention to put the land to homestead use. *Lifemark Corp. v. Merritt, supra.*[10] Once the claimant has established the character of the property as homestead, the burden shifts to the creditor to disprove its continued existence. *Lifemark Corp. v. Merritt, supra* at 314. "The burden amounts to a presumption that the homestead continues until its termination is proved." *Id.*

To meet her initial burden of proof, the appellant must show a combination of both overt acts of homestead usage and intent to claim the land as homestead. Scott Bradley, the appellant's husband, tes-

tified at trial concerning the usage and intent of the appellant to claim the Paige-brooke Farm as their homestead.[11] In his testimony, Scott Bradley stated that the entire tract known as Paigebrooke Farm was used as ranching property. In addition, there was evidence presented that appellant maintained a hay meadow on approximately 17 acres of the Paigebrooke Farm and allowed her livestock to graze on the acreage.[12] Appellant contends that this testimony conclusively established that the 114.47 acre tract in controversy was used as her homestead. While these facts concerning appellant's use of the property are undisputed, this evidence, at most, created a fact issue regarding the usage and intention of the appellant to claim the property as a part of the rural homestead. As such, the Court must determine whether the Bankruptcy Court's finding of fact was clearly erroneous. The Fifth Circuit has directed that a finding of fact is clearly erroneous " 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *Wilson v. Huffman (In re Missionary Baptist Foundation of America)*, 818 F.2d 1135, 1142 (5th Cir.1987), *citing United States v. United States Gypsum Co.*, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

erty is not served by municipal utilities and fire and police protection.
(d) The definition of a homestead as provided in this section applies to all homesteads in this state whenever created.
Tex.Prop.Code Ann. § 41.002 (Vernon Supp. 1990) (formerly Tex.Prop.Code Ann. § 41.001).

**10.** Texas courts have held that land is used for support of the family either by "cultivating it for income to be actually used for the purposes of the home, using it directly for the purposes of raising family supplies, or for cutting firewood or the like." *Sims v. Beeson*, 545 S.W.2d 262, 263 (Tex.Civ.App.—Tyler 1977, writ ref'd n.r.e.); *see also Fajkus v. First Nat'l Bank of Giddings*, 735 S.W.2d 882, (Tex.App.—Austin 1987, writ denied) (family cleared brush, planted grass and were grazing cattle on the property); *Clark v. Salinas*, 626 S.W.2d 118 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.) (homestead was proven by use of property as residence or place to cultivate crops or cut firewood for the claimant's personal consumption); *Braden v.*

*McClure*, 603 S.W.2d 288 (Tex.Civ.App.—Amarillo 1980, no writ) (by owning, possessing, residing on and using the property as his home, claimant showed by overt action an intent to use such property as homestead); *Vaughn v. Vaughn*, 279 S.W.2d 427 (Tex.Civ.App.—Texarkana 1955, writ ref'd n.r.e.) (homestead parcel was used as an adjunct of the residence for the purpose of growing crops or a pasture for livestock).

**11.** Because the appellant testified at trial that her intent with regard to the Paigebrooke Farm did not differ from that of her husband, the Court will accept Scott Bradley's testimony as evincing the appellant's usage and intent to claim the property as homestead. Tr. p. 146.

**12.** The Bankruptcy Court found, however, that livestock and the hay meadow had been located on the farm for many years before the appellant acquired the property.

After a careful review of the record, the Court finds that the record is replete with evidence showing that the appellant and her husband never intended to claim the outlying acreage as their homestead. On December 30, 1977, the appellant and her husband entered into a partnership agreement which stated that the partners would hold the property for investment and development purposes. Further, the partnership agreement provided that the appellant and her husband would occupy as their homestead only the 15 acre tract on which the home and out buildings are currently located. From 1977 to the present date, the appellant and her husband sought assiduously to market the property for development by sending letters to prospective buyers, advertising the property, and engaging an engineering firm to develop plans for residential estates. On February 28, 1985, in an unrelated loan transaction, the appellant and her spouse executed a homestead disclaimer wherein they represented that the 114.47 acres was not their homestead. On August 26, 1986, Scott Bradley claimed only one acre of the 129.45 acres as their homestead in a letter addressed to the Tarrant County Appraisal District. On January 28, 1987, Scott Bradley claimed only one acre of property as his homestead in a letter addressed to the Keller Independent School District. On August 20, 1985, appellant and her husband executed and issued to Seguin a homestead disclaimer and affidavit in which they represented that the 114.47 acres mortgaged to Seguin was not part of their homestead.

Based upon the foregoing, the Court finds that there was sufficient evidence in the record for the Bankruptcy Court to determine that the appellant intended to use the property, not as homestead, but as development property for residential and/or commercial use. The Bankruptcy Court resolved the factual issue regarding the appellant's usage and intent to claim the property as homestead against the appellant, and, in view of the evidence before the Court, the Court finds that the evidence sufficiently supports the trial court's findings. Because the Bankruptcy Court correctly found that the appellant and her husband intended to occupy only 15 acres of the 129.47 acres as their homestead as reflected by their consistent written statements and by their actual use of only 15 acres, and that the 114.47 acres had not been used by the appellant with the intention of claiming the property as their rural homestead, the Court concludes that the findings by the Bankruptcy Court were not clearly erroneous and hereby AFFIRMS the Bankruptcy Court's findings.