**In re Donna Marie BROWN, Debtor.**

**Doran BROWN, Plaintiff,**

v.

**Donna Marie BROWN, Defendant.**

**Bankruptcy No. 795–70084 RCM–7.
Adv. No. 795–7007.**

United States Bankruptcy Court,
N.D. Texas,
Wichita Falls Division.

Sept. 11, 1995.

Monte J. White, Wichita Falls, TX, for debtor.

Harry Cure, Jr., Trustee, Ft. Worth, TX.

## MEMORANDUM OPINION

ROBERT McGUIRE, Chief Judge.

Donna Marie Brown ("Donna" or "Debtor") claims a homestead exemption under Texas law in her property at 1411 Harris Lane. Her ex-husband Doran Lee Brown ("Doran" or "Brown") has objected to her claim of exemption. The Court held a hearing on this matter on August 23, 1995. The following are the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052:

### Findings of Fact

1. During their marriage Donna and Doran Brown lived at 1411 Harris Lane in Wichita Falls, Texas.
2. Donna and Doran were divorced on September 23, 1994. The divorce decree awarded the Harris Lane property to Donna. Donna owned the Harris Lane house as her separate property prior to her marriage to Doran. The divorce decree and a warranty deed executed at that time listed the Harris Lane property as her address.
3. Donna married Boyd Engelman ("Engelman") on November 25, 1994. This is her third marriage.
4. On May 15, 1994, Donna moved into Engelman's home at 2208 Talunar Lane in Wichita Falls. Engelman owns the house at 2208 Talunar Lane. Sometime prior to her divorce, Donna moved her possessions to Talunar Lane. Donna continuously resided with Engelman at his Talunar Lane home from May 12, 1994 through June 6, 1995. Donna could not enter the Harris Lane home for a period of time prior to her divorce (i.e., until approximately May 31, 1994) due to a court restraining order. Doran left the Harris Lane house on approximately May 20, 1994.

5. Prior to his marriage to Donna, Engelman claimed the Talunar Lane property as his homestead. He still owns the Talunar Lane property. The testimony did not establish whether he claimed the Talunar Lane house as his homestead after his marriage to Donna.

6. Donna filed a chapter 7 petition on March 14, 1995. On her bankruptcy petition, Donna listed her address as "2208 Talunar Lane." At the time of both the filing and the 341 meeting, she resided at 2208 Talunar Lane.

7. Doran filed his objection to claims of exemptions on May 12, 1995. Donna and Engelman moved back to the Harris Lane property on June 6, 1995. Donna mistakenly used a July 6 date in the request for admissions. Donna and Engelman are currently trying to lease the Talunar Lane home.

8. Donna did not have any income to cover the house payment on the Harris Lane property at the time of divorce. Donna held various part-time jobs between May and September 1994. She contemplated sale of the home of that time; however, she was able to rent the home to her daughter and some friends in order to cover the house payments. The lease with her daughter required rent payments slightly in excess of the mortgage payments.

9. Engelman testified that some time after Donna moved in with Engelman, Donna listed the Harris Lane property for sale. Engelman could not recall when the house was for sale, but, he felt it was well in advance of bankruptcy.

10. Apparently, Donna also leased the house to unrelated tenants. The record does not indicate the term of the lease, however, the term ended in August 1995. The house rented for an amount slightly in excess of the mortgage payments. The tenants defaulted on June 1, 1995 and evacuated the property on June 6, 1995

pursuant to a forcible entry action brought by Debtor. Upon the early departure of these tenants, Donna and Engelman moved to the Harris Lane address.

11. Donna testified that she never truly intended to sell the house and she always considered the house her home. Donna testified that she had always intended to move back to the Harris Lane house.

12. Both houses have the same number of bedrooms. The debt on the Harris Lane house is approximately $16,000. Donna testified that the home is probably worth $28,000. Engelman estimated that the Talunar Lane property was worth around $30,000.

13. He made repairs to the Harris Lane home after the tenants moved because he and Donna planned to move into the home. These repairs occurred post-petition. Engelman invested somewhere between $500 and $1,000 in the Harris Lane property. The Harris Lane home is currently in better shape than the Talunar Lane home.

14. Engelman does not feel that Donna had intentions to sell the Harris Lane property.

### Conclusions of Law

This Court must determine Debtor's right to the homestead exemption as of the petition date. *Stinson v. Williamson (Matter of Williamson)*, 804 F.2d 1355, 1359 (5th Cir.1986). Doran Brown bears the burden of proving that Debtor is not entitled to a homestead exemption on the Harris Lane property. Bankr.Rule 4003(c). The court finds that Debtor is not entitled to claim the homestead exemption with respect to the Harris Lane property.

Brown argues that Debtor's homestead cannot survive her divorce. *See Tanton v. State Nat'l Bank of El Paso*, 79 S.W.2d 833, 835 (Tex.1935). However, *Tanton* bases its holding on an old version of the Texas Constitution. Prior to 1973, the Texas Constitution only provided homestead exemptions for families, including husband and wife. *Id.* at 834. Upon the dissolution of the

marriage, the family dissolved and the homestead privilege dissolved as well. *Id.* at 834–835. The Texas Legislature amended the constitution in 1973 to read, "The homestead of a family, *or of a single adult person*, shall be, and is hereby protected from forced sale." Tex.Const. art. XVI, § 50. Therefore, a divorce no longer destroys homestead rights for parties keeping title of the home. *See Eggemeyer v. Eggemeyer*, 623 S.W.2d 462, 465 (Tex.App.—Waco 1981, writ dism'd w.o.j.).

Brown correctly asserts, however, that each family may claim only one homestead. *Hillock Homes, Inc. v. Claflin (Matter of Claflin)*, 761 F.2d 1088, 1092 (5th Cir.1985). Further, Donna "cannot show the existence of a homestead for the [Engelman] family by showing the existence of the prior homestead of [Donna Brown Engelman] as a single adult person." *Id.* at 1091. Rather, the Engelman "family" must demonstrate an intent to establish a homestead in the Harris Lane property. *Id.* Therefore, the court must determine whether the Engelman family established a homestead in the Harris Lane house as of the date of bankruptcy.

To sustain a homestead claim under Texas law, a debtor must show "concurrence of usage and intent on the part of the owner to claim the land as homestead." *Magill v. Magill*, 816 S.W.2d 530, 535 (Tex.App.—Houston [1st Dist.] 1991, writ denied). A subjective intent to make property a homestead in the future should be evidenced by overt acts of preparation. *Matter of Claflin*, 761 F.2d at 1091. "While occupying a piece of property as homestead, a person cannot establish a homestead right in another place by 'attempting to live there in the future.'" *Caulley v. Caulley*, 806 S.W.2d 795, 797 (Tex. 1991), *quoting O'Brien v. Woeltz*, 94 Tex. 148, 58 S.W. 943 (1900). Donna's intent to move back to Harris Lane at some point, standing alone, will not establish a homestead for the Engelman family.

If on the date of bankruptcy Donna and Boyd Engelman were vacillating as to which property to claim as homestead, they did not establish their homestead exemption in the Harris Lane property. As of the petition date, the family did not occupy the Harris

Lane home or demonstrate an intent to establish homestead coupled with overt acts. *Surratt v. Thomas,* 233 S.W.2d 350, 352 (Tex. Civ.App.—Beaumont 1950, no writ) ("[I]n order to impress upon property a homestead character, in the absence of actual occupancy thereof, there must be an intention by the head of the family to reside upon it with his family, coupled with some overt act of preparation evidencing that intention.") Debtor and Engelman did not make any repairs to or take any other overt steps to move back into the Harris Lane house until after debtor filed her bankruptcy petition and after Doran filed his objection to claim of exemption. In addition, Debtor did not show a "family intent" to establish homestead in the Harris Lane property. Neither Donna nor Boyd Engelman stated that Boyd felt that the Harris Lane house was his home or that he no longer considered the Talunar Lane property as his homestead. In light of the Engelman's continuous occupation of the Talunar Lane house, owned by Boyd Engelman, the Engelman family did not evince an overt intention to claim the Harris Lane home.

The cases regarding abandonment of homestead only apply if the Engelman family first proves its homestead in the Harris Lane property. *Matter of Claflin,* 761 F.2d at 1092; *Burk Royalty Co. v. Riley,* 475 S.W.2d 566, 568 (Tex.1972). Debtor argues that failure to designate the Harris Lane property as homestead will unfairly deny her of a right to a homestead. However, her family may only claim one homestead, so she cannot continue to also claim a homestead right as a single person. *Matter of Claflin,* 761 F.2d at 1092. Further, "it is entirely possible for someone to own only one piece of real property, yet not have a homestead." *In re Mitchell,* 80 B.R. 372, 384 (Bankr.W.D.Tex.1987).

There was insufficient proof that the Engelman family had established a homestead in the Harris Lane house as of the date of bankruptcy. Judgment will be entered in accordance with the foregoing opinion.