# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 1, 2009

Charles R. Fulbruge III
Clerk

No. 08-10144

AG ACCEPTANCE CORPORATION; RABO AGRIFINANCE INC

Plaintiffs-Appellees

v.

ROBERT WAYNE VEIGEL; STEVE VEIGEL; TERRA XXI LTD; VEIGEL CATTLE COMPANY; TERRA PARTNERS; BURNETT & VEIGEL INC; WILLIAMS & VEIGEL INC; KIRK & VEIGEL INC; MASSEY, KIRK & VEIGEL INC

Defendants-Appellants

Appeal from the United States District Court
for the Northern District of Texas

Before REAVLEY, BARKSDALE, and GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

In this property dispute, creditors AG Acceptance Corporation and Rabo Agrifinance Inc. (collectively, the "Creditors") filed suit against debtors Robert Veigel, his family members, and various family-related entities (collectively, the "Veigels"). The Creditors sought to quiet title to 960 acres of land (the "960 Acres") previously used in the Veigels' farming operations. Following a bench trial, the district court entered a declaratory judgment specifying that (1) the Creditors properly foreclosed and executed on the 960 Acres, (2) the Veigels' attempts to transfer the property were fraudulent under the Texas Uniform

Fraudulent Transfer Act ("TUFTA"), TEX. BUS. & COM. CODE § 24.001 *et seq.*, and (3) the Creditors were entitled to attorney's fees. The Veigels now appeal. For the following reasons, we reverse the award of attorney's fees and affirm the judgment in all other respects.

## I

This case involves two separate property interests in the 960 Acres—a 25% interest and a 75% interest. Prior to the events at issue, Robert Veigel owned the 25% interest and certain of his relatives (the "Veigel Relatives") owned the 75% interest. For clarity, the subsequent history of each property interest will be discussed separately.

In 2001, the Veigel Relatives sold the 75% interest to AG Acceptance, a creditor of the Veigel family's farming operation. The following year, AG Acceptance agreed to sell the 75% interest back to Terra XXI, a Veigel-family entity. In August of 2003, AG Acceptance transferred the 75% interest to Terra XXI, which in turn executed a note and deed of trust as security for the purchase price. The day after executing the note, Terra XXI transferred the 75% interest to Terra Partners, another Veigel-family entity. Neither Terra XXI nor Terra Partners ever made a payment on the note to AG Acceptance. Accordingly, AG Acceptance foreclosed on the 75% interest in October of 2003.

In 2000, Robert Veigel leased his 25% interest to Terra Partners. In 2003, as AG Acceptance moved to collect on debts owed by the Veigels, Robert Veigel executed a lease modification extending the Terra Partners lease until 2012. In 2006, as creditor Rabo Agrifinance moved to collect on other debts owed by the Veigels, Robert Veigel executed a second modification extending the lease until 2021 and permitting himself to claim a homestead on the land. Rabo Agrifinance subsequently secured a $3.9 million judgment against the Veigels and moved to execute on the 25% interest in satisfaction of the judgment. As this execution proceeding was pending, Robert Veigel and his wife filed a

homestead declaration on the 25% interest. However, the Veigels were denied homestead protection, and Rabo Agrifinance executed on the 25% interest.

In the instant case, the Creditors initially brought a diversity action to partition the 960 Acres. When the Creditors subsequently acquired 100% of the property, the complaint was amended to essentially request a declaratory judgment (1) quieting title in the property and (2) declaring that the Veigels' various transfers and lease modifications were "fraudulent transfers" under TUFTA. In response, the Veigels challenged Rabo Agrifinance's execution on the 25% interest, arguing that the interest was a protected homestead under Texas law. They also challenged AG Acceptance's foreclosure on the 75% interest. After a bench trial, the court entered judgment in favor of the Creditors. The court found that (1) AG Acceptance validly foreclosed on the 75% interest, (2) Rabo Agrifinance validly executed on the 25% interest, which was not a protected homestead, and (3) both the transfer of the 75% interest to Terra Partners and the lease modifications were fraudulent under TUFTA. The court also awarded attorney's fees to the Creditors. The Veigels now challenge the homestead finding, the fraudulent-transfer findings under TUFTA, and the award of attorney's fees.

## II

On appeal from a bench trial, we review findings of fact for clear error and legal issues *de novo*. *Houston Exploration Co. v. Halliburton Energy Servs., Inc.*, 359 F.3d 777, 779 (5th Cir. 2004). "A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court based on all the evidence is left with the definitive and firm conviction that a mistake has been committed." *Id.* (internal quotation marks omitted).

### III

### A

The Veigels contend that the district court erred in finding that the 25% interest was not a homestead under Texas law. The Veigels maintain that the property's status as a homestead rendered it exempt from execution by Rabo Agrifinance. Whether a certain parcel of land constitutes a homestead is a question of fact. *See In re Niland*, 825 F.2d 801, 806–07 (5th Cir. 1987).

Under Texas law, a landowner may have one homestead that is exempt from execution by creditors. TEX. CONST. art. XVI, §§ 50–51. The party seeking homestead protection has the burden of establishing that a parcel of land qualifies as a homestead. *Chapman v. Olbrich*, 217 S.W.3d 482, 495–96 (Tex. App.—Houston [14th Dist.] 2006, no pet.). When the landowner does not actually occupy the land (as here), a homestead may be established if the landowner can show (1) a *present intent* to occupy and use the land as a home and (2) an overt act in furtherance of this intent. *Farrington v. First Nat'l Bank of Bellville*, 753 S.W.2d 248, 250 (Tex. App.—Houston [1st Dist.] 1988, writ denied). As to the present-intent prong, the landowner must show a good faith intent to use the land as a home "in a reasonable and definite time in the future." *Id.* at 250–51; *see also Kendall Builders, Inc. v. Chesson*, 149 S.W.3d 796, 809 (Tex. App.—Austin 2004, pet. denied) (explaining that the intent must be "bona fide"); *Matter of Claflin*, 761 F.2d 1088, 1091 (5th Cir. 1985) (explaining that the intent must be fixed, not "contingent" on other events).

As to the overt-act prong, the landowner must show "preparations toward actual occupancy and use that are of such character and have proceeded to such an extent as to manifest beyond doubt the intention to complete the improvements and reside upon the place as a home." *Farrington*, 753 S.W.2d at 250 (internal quotation marks omitted). In other words, mere commercial or recreational use of the land is generally insufficient—the landowner must show

an act of preparation to use the land *as a home*. *See In re Brown*, 191 B.R. 99, 101–02 (Bankr. N.D. Tex. 1995) (finding that the landowners failed to establish a homestead because the they "did not make any repairs to or take any other overt steps to move back into the . . . house").

In the proceedings below, the Veigels argued that Robert Veigel established a homestead on the 25% interest. They relied primarily on the homestead declaration signed by Robert Veigel declaring his intent to use the 960 Acres as a family home. However, after reviewing the evidence and testimony, the district court found that Robert Veigel (1) did not possess the present intent to use any portion of the 960 Acres as a home and (2) did not take any overt act in furtherance of his alleged intent.

We hold that the district court's findings were not clearly erroneous. First, there was more than enough evidence to support a finding that Robert Veigel did not have a *bona fide* intent to use the 960 Acres as a home. The evidence demonstrated that Robert Veigel had never lived on the 960 Acres, had not spent a night there since 1998, and continued to claim a separate homestead on another tract of land that his family had occupied for years. Although Robert Veigel attempted to distance himself from this alternative homestead claim at trial, the court apparently chose not to credit this testimony. *See Coffel v. Stryker Corp.*, 284 F.3d 625, 634 (5th Cir. 2002) ("Intent is a fact question uniquely within the realm of the trier of fact because it so depends upon the credibility of the witnesses and the weight to be given their testimony.").

Moreover, the proffered homestead declaration itself fails to establish the requisite intent. The document states that Robert Veigel and his wife had the "present intent to reside on [the 960 Acres] *in the event that* their previously asserted homestead rights in adjoining property are not judicially allowed after a final appeal" (emphasis added). Giving this language its plain meaning, the family's intent to live on the 960 Acres depended on their being denied

homestead rights in their primary residence following a state-court appeal. Under Texas law, this type of contingent intent is insufficient to establish a homestead. *See Matter of Claflin*, 761 F.2d at 1091 (finding that the landowners failed to establish a homestead because they "asserted only a contingent future intent to move to the Houston Property if [one spouse] could not establish herself professionally in Austin").

In the alternative, there is also sufficient evidence to support the district court's finding that Robert Veigel did not take any overt action in furtherance of his alleged intent. The Veigels essentially concede that he did not take any steps to build, plan, or occupy a home on the 960 Acres. Instead, they rely on Robert Veigel's long ownership and the commercial improvements made to the property over the years, such as irrigation systems and the on-site office. These are plainly not "preparations toward actual occupancy and use that are of such character and have proceeded to such an extent as to manifest *beyond doubt* the intention to complete the improvements and reside upon the place as a home."[1] *Farrington*, 753 S.W.2d at 250 (emphasis added and internal quotation marks omitted).

---

[1] The Veigels rely heavily on *Graham v. Kleb*, 2008 WL 243669 (S.D. Tex. Jan. 29, 2008) (unpublished), for the proposition that the overt acts need not necessarily relate to the establishment of a dwelling. In *Graham*, the district court upheld the bankruptcy court's finding that landowner Kleb had established a homestead on a rural property, even though Kleb had not taken any specific steps toward establishing a dwelling. *Id*. at *4–5. The court reasoned that the property had been in Kleb's family for many years and that Kleb had improved the property by maintaining roads, fences, and hunting blinds. *Id*. at *4. The Veigels' reliance on this case is misplaced. First, the district court in *Graham* was reviewing the bankruptcy court's finding *in favor* of homestead rights for clear error. Second, the bankruptcy court specifically credited Kleb's testimony that he intended to build a home as soon as his finances would permit. *Id*. Third, in direct contrast to the case at hand, "[t]he evidence showed that Kleb had not claimed any other property as his homestead." *Id*. Finally, to the extent that this unreported federal case stands for the proposition that the overt act need not demonstrate a *home-use* intent, it is clearly inconsistent with Texas case law. *See Farrington*, 753 S.W.2d at 250.

The district court did not clearly err in finding that the Veigels failed to establish a homestead under Texas law. Accordingly, the 25% interest was properly subject to execution by Rabo Agrifinance.[2]

**B**

The Veigels next contend that the district court erred in finding that the transfer of the 75% interest to Terra Partners was a fraudulent transfer under TUFTA. For the first time on appeal, the Veigels argue that the transaction was exempt from TUFTA because the 75% interest was encumbered by a valid lien at the time of the transfer. *See* TEX. BUS. & COM. CODE ANN. § 24.002(12) & (2).

Under this Circuit's general rule, arguments not raised before the district court are waived and will not be considered on appeal unless the party can demonstrate "extraordinary circumstances."[3] *See N. Alamo Water Supply Corp. v. City of San Juan*, 90 F.3d 910, 916 (5th Cir. 1996). "Extraordinary circumstances exist when the issue involved is a pure question of law and a miscarriage of justice would result from our failure to consider it." *Id.* Here, the Veigels' briefing is devoid of any argument that a miscarriage of justice would

---

[2] Our homestead holding has a second consequence: The Veigels also claim the district court erred in finding the lease modifications to be "fraudulent transfers" under TUFTA. On this point, they argue only that the 25% interest was a homestead property and thus exempt from TUFTA. Because we find that the 25% interest was not a homestead, the Veigels' claim of error on this point must fail.

[3] The Veigels contend that it was unnecessary for them to raise the valid-lien argument below because this case was tried to the bench. They cite *Colonial Penn Ins. v. Market Planners Ins. Agency Inc.*, 157 F.3d 1032, 1036–37 (5th Cir. 1998), for the proposition that a party may raise an issue for the first time on appeal following a bench trial. However, *Colonial Penn* holds only that a party need not object to a court's factual findings or legal conclusions in order to preserve the appeal of such findings and conclusions. *Id.* This holding does not relieve a party of its responsibility for raising the substantive legal arguments that justify relief during trial. *See In re Liljeberg Enters., Inc.*, 304 F.3d 410, 468–69 (5th Cir. 2002) (finding that the party's failure to raise a legal argument during the bench trial constituted waiver). Thus, the Veigels waived the valid-lien issue, and the extraordinary-circumstances test applies on this appeal.

result from our failure to consider the TUFTA issue. *See id.* (explaining that the burden to establish extraordinary circumstances is on the party seeking review). Moreover, the Veigels concede that reversal on this issue would not affect title to the 75% interest, as the validity of AG Acceptance's subsequent foreclosure is undisputed on appeal. Accordingly, because the Veigels have failed to identify any harm resulting from the district court's TUFTA ruling,[4] we decline to consider their substantive argument for the first time on appeal.

## C

The Veigels next contend that the district court erred in awarding attorney's fees to the Creditors. This case was tried under the Federal Declaratory Judgment Act ("FDJA"), 28 U.S.C. § 2201 *et seq.*, which authorizes an award of attorney's fees "where 'controlling [state] substantive law' permits such recovery." *See Self-Ins. Inst. of Am., Inc. v. Korioth*, 53 F.3d 694, 697 (5th Cir. 1995). The district court determined that the Texas Declaratory Judgment Act ("TDJA"), TEX. CIV. PRAC. & REM. CODE ANN. § 37.001 *et seq.*, was the controlling substantive law in this diversity suit. After both parties briefed the issue under the relevant TDJA standard, the court determined that the Creditors were entitled to attorney's fees.

For the first time on appeal, the Veigels correctly argue that our precedent precludes an award of attorney's fees pursuant to the TDJA as a matter of law. *See Utica Lloyd's of Texas v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998) (holding that "a party may not rely on the [TDJA] to authorize attorney's fees in a diversity case because the statute is not substantive law"). Because the Veigels again failed to raise this argument below, we must consider whether "extraordinary circumstances" justify our consideration of the issue on appeal.

---

[4] As to harm, the Veigels do suggest that the TUFTA ruling affects Terra Partners' joint liability for the award of attorney's fees. However, pursuant to Part III(C) of this opinion, the award of attorney's fees is reversed in its entirety.

*See N. Alamo Water*, 90 F.3d at 916 (explaining that "[e]xtraordinary circumstances exist when the issue involved is a pure question of law and a miscarriage of justice would result from our failure to consider it"). Here, the Veigels have demonstrated that such circumstances exist: First, the general availability of attorney's fees under a particular statute is a pure question of law. *See Finger Furniture Co. Inc. v. Commonwealth Ins. Co.*, 404 F.3d 312, 315 (5th Cir. 2005). Second, our failure to correct the issue would result in a miscarriage of justice. In this context, we have often considered whether the alleged error is obvious or merely debatable. *See Conley v. Bd. of Trs.*, 707 F.2d 175, 178 (5th Cir. 1983) (reasoning that failure to reach the issue would not result in a miscarriage of justice because "the merit of the [party's] omitted claim is not so plain or obvious"). Here, the district court's award of attorney's fees was patently erroneous in light of controlling precedent. *See Utica Lloyd's*, 138 F.3d at 210. Furthermore, our failure to reach the issue would result in significant actual harm to the Veigels—liability for approximately $206,544.52 in unjustified attorney's fees.

In sum, the Veigels have demonstrated the extraordinary circumstances necessary to justify our review of their unraised argument. Accordingly, we adhere to our precedent and reverse the district court's award of attorney's fees pursuant to the TDJA. *See Utica Lloyd's*, 138 F.3d at 210.

## IV

For the foregoing reasons, we REVERSE the district court's award of attorney's fees and AFFIRM the judgment in all other respects.