### IN THE UNITED STATES COURT OF APPEALS
### FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 19, 2012

Lyle W. Cayce
Clerk

No. 11-40975
Summary Calendar

In the Matter of:
MARCO A. CANTU and ROXANNE CANTU,

                                    Debtors

_____

MARCO A. CANTU and ROXANNE CANTU,

                                    Appellants

v.

INTERNATIONAL BANK OF COMMERCE,

                                    Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:11-cv-28

Before HIGGINBOTHAM, DAVIS, and ELROD, Circuit Judges.

PER CURIAM:*

Marco and Roxanne Cantu ("the Cantus") originally filed a chapter 11

bankruptcy petition. The Cantus then initiated an adversary proceeding against

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

the International Bank of Commerce ("IBC").  Before they filed for bankruptcy, the Cantus had been engaged in arbitration and state court litigation with IBC. In the bankruptcy case, the Cantus and IBC entered into a settlement agreement that resolved all controversies between them.  The bankruptcy court approved the parties' settlement agreement and entered a written order providing that IBC had an "Allowed Claim" in excess of $2.2 million, that IBC continued to have a perfected first lien security interest in all accounts receivable of Marco Cantu and his law firm, and that IBC was entitled to 75% of Cantu's future case revenues in satisfaction the Allowed Claim.

Several months later, the Cantus' bankruptcy case converted to chapter 7 and a trustee was appointed.  It then emerged that Marco Cantu had an interest in the settlement from a personal injury case filed by his law firm after the conversion of the Cantus' bankruptcy to chapter 7 and that Cantu had actually received a portion of the settlement funds but had not disclosed those funds.  The Cantus filed a "Motion to Clarify" the bankruptcy court's prior order, seeking a declaration that the personal injury lawsuit proceeds were not subject to IBC's lien.  The bankruptcy court denied that motion, holding that IBC had a valid post-petition lien on the lawsuit proceeds and reaffirming that, under the parties' settlement agreement, IBC was entitled to 75% of future revenues received by Cantu.   The district court affirmed the bankruptcy court's order.

On appeal, the Cantus argue they are not bound by the settlement agreement on three grounds: (1) the party bound by the settlement agreement is the chapter 7 trustee, not the Cantus; (2) it would not be equitable to hold the Cantus to the settlement agreement post-conversion; and (3) §§ 348 and 552 of the Bankruptcy Code operate to relieve the Cantus' post-conversion property from IBC's lien.  The Cantus waived their first two arguments by failing to raise

them in the district court, and they have not demonstrated extraordinary circumstances justifying consideration of those arguments on appeal.[1]

The Cantus' non-waived third argument fails because, as the district court correctly found, §§ 348 and 552 of the Bankruptcy Code do not exempt Marco Cantu's lawsuit proceeds from IBC's post-petition lien.

Section 348(d) states:

> A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section 1112, 1208, or 1307 of this title, other than a claim specified in section 503(b) of this title, shall be treated for all purposes as if such claim had arisen immediately before the date of the petition.[2]

Section 552(a) states:

> Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.[3]

The Cantus maintain that because IBC's original lien arose prior to the commencement of the bankruptcy case, the property they acquired post-petition cannot be subject to the lien if the lien has not been revived. They admit that, absent conversion, the settlement agreement approved by the bankruptcy court would have revived the lien. However, because their case was converted to a chapter 7 bankruptcy, they maintain that under § 348(b), the settlement agreement must be treated as if the parties entered into it before the commencement of the case and hence that, under § 552(a), Cantu's post-petition receivables are not subject to any lien resulting from the agreement.

---

[1] *See French v. Allstate Indem. Co.*, 637 F.3d 571, 582-83 (5th Cir. 2011) (citing *AG Acceptance Corp. v. Veigel*, 564 F.3d 695, 700 (5th Cir. 2009)).

[2] 11 U.S.C. § 348(d).

[3] *Id.* § 552(a).

The Cantus' argument is flawed in at least two ways. First, they mistakenly assume that the parties' settlement agreement constituted a "claim," and, second, they conflate the terms "claim" and "security agreement." Under the Bankruptcy Code, the term "claim" means:

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured or
>
> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to any equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.[4]

As the district court explained, "[IBC's] claim, *i.e.*, right to payment, did not 'arise' at the time the claim was *resolved* through the parties' agreement and through subsequent court approval."[5] Thus, "IBC's security interest in Cantu's post-petition receivables as created by the Settlement Agreement and Order cannot be deemed under § 348(d) to have arisen pre-petition," and "§ 348(d) does not transform IBC's lien into one resulting from a security agreement entered into 'before the commencement of the case' so as to trigger application of § 552(a)."[6]

We have considered the Cantus' arguments to the contrary and find them to be unpersuasive.

AFFIRMED.

---

[4]  11 U.S.C. § 101(5).

[5] *Cantu v. Int'l Bank of Commerce* (*In re Cantu*), No. 7:11-cv-28, slip op. at 7 (S.D. Tex. Aug. 5, 2011), ECF No. 7.

[6] *Id.*