# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

————

No. 16-60834

————

United States Court of Appeals
Fifth Circuit

**FILED**

December 20, 2017

Lyle W. Cayce
Clerk

BARNHART RANCH COMPANY,

        Petitioner - Appellant

v.

COMMISSIONER OF INTERNAL REVENUE,

        Respondent - Appellee

-----------------------------------------------------------------

L. IRVIN BARNHART, Deceased; PAUL F. BARNHART, JR., Independent Executor,

        Petitioners - Appellants

v.

COMMISSIONER OF INTERNAL REVENUE,

        Respondent - Appellee

-----------------------------------------------------------------

PAUL F. BARNHART, JR.; KAROL ANN BARNHART,

        Petitioners - Appellants

v.

COMMISSIONER OF INTERNAL REVENUE,

        Respondent - Appellee

No. 16-60834

Appeal from the Decision
of the United States Tax Court
TC Nos. 19458-14, 19459-14, 19460-14

Before BARKSDALE, DENNIS, and CLEMENT, Circuit Judges.

PER CURIAM:*

In two of these three consolidated cases, taxpayers Paul and Karol Barnhart, and Irvin Barnhart (collectively Barnharts) challenge the tax court's affirming the Commissioner of Internal Revenue's assessment of income-tax deficiencies and penalties against them, stemming from income-tax reporting for their cattle operation. Primarily at issue is whether the Barnharts waived their claim on appeal for avoiding tax liability by failing to present it to the tax court. Also at issue is whether the tax court clearly erred in its assessment of deficiencies and penalties. AFFIRMED.

I.

Brothers Paul Barnhart, Jr., (Paul Barnhart) and Irvin Barnhart own cattle, land, and oil operations in Texas. A 2014 IRS audit for tax-years 2010–12 revealed Paul Barnhart (filing jointly with his wife Karol Barnhart) and Irvin Barnhart reported cattle-operation losses on their personal returns. Concluding the losses should have been reported on the corporate returns of Barnhart Ranch Company (BRC), the Barnhart brothers' jointly-held corporation, the Commissioner assessed a deficiency and imposed penalties against Paul and Karol Barnhart, Irvin Barnhart, and BRC. After consolidating the three cases, the tax court affirmed the deficiencies and

---

* Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

2

penalties assessed against the Barnharts, but, pursuant to the parties' stipulations, vacated those against BRC.

Paul and Irvin Barnhart inherited various business interests from their father, Paul Barnhart, Sr., who began acquiring cattle, land, and oil-and-gas resources in the 1950s. In so doing, he formed Barnhart Co., a corporation, to pursue his oil-and-gas, land, and cattle enterprises. For these activities, Barnhart Co. adopted a "joint interest accounting system", as described *infra*.

Paul Barnhart, Sr., conveyed cattle to the Barnhart brothers beginning in 1979, so that, by 1994, all cattle operations were under their control. BRC was created in 1994 solely for their cattle operation; and they adopted and used the joint-interest accounting system for BRC. Before Irvin Barnhart's death in 2015, Paul and Irvin Barnhart were BRC's only shareholders, each owning one-half of its shares. In addition, they were partners, members, or shareholders in many partnerships, limited partnerships, LLCs, and other corporations.

The scope of BRC's corporate activities and functions with respect to the cattle operation are in dispute, as discussed *infra*. The cattle operation had 17 employees, all of whom were paid by BRC. One of those employees was Donald Sronce, the cattle manager and supervisor, who, *inter alia*: gathered cattle, separated and penned them, worked them down chutes, inventoried them, gave them vaccinations, built fences, repaired equipment, and dealt with contractors.

In addition, BRC held workers'-compensation and employers'-liability policies for the cattle operation, and purchased farm and ranch insurance in its own name. Moreover, BRC purchased assets, such as a buckskin gelding, utility-task vehicle with winch, and several other vehicles; and BRC was the recorded buyer and seller of the cattle, as shown by bills of sale. Those

No. 16-60834

purchases and sales were in the name of "Barnhart Ranch Company", "Barnhart Ranch Co.", and "Barnhart Ranch".

As noted, BRC adopted the "joint-interest accounting" system used by Barnhart Co., the corporation formed by Paul Barnhart, Sr.  In the Barnharts' opening statement at trial, their counsel explained joint-interest accounting: "[It] is a common practice in the oil and gas industry based on the concept of agency", because, due to the high costs and risks incident to oil-and-gas exploration, it is often economically advantageous for numerous entities to combine their capital investments on one play; and, because the size of investments and interests vary, the joint-interest system efficiently bills investors according to their ownership interest, and "reduce[s] the complexities of distributing income and expense among joint owners".

Using the joint-interest accounting system, BRC paid expenses for, *inter alia*, feed and other ranch supplies, the payroll of the 17 employees, maintenance and repairs, and lease rentals on acreage used for the cattle operation.  The accounting system issued monthly invoices reflecting each brother's one-half share of the expenses.  Likewise, when BRC sold cattle, proceeds were deposited in BRC's account, with monthly profits payable to Paul and Irvin Barnhart.

Drought in 2010–12 caused the cattle operation to suffer.  BRC reported no gross receipts or taxable income for 2012–13, while Paul and Irvin Barnhart collectively reported net losses of $860,000 in 2010, $685,000 in 2011, and $970,000 in 2012 on their personal returns, all stemming from their cattle operation.

In the 2014 IRS audit for tax years 2010–12, the Commissioner took issue with the cattle-operation's reporting, finding cattle-operation losses should have been reported by BRC, not the Barnharts.  The Commissioner also audited BRC's corporate returns for tax years 2012–13.  In three cases against

No. 16-60834

Paul and Karol Barnhart, Irvin Barnhart, and BRC, respectively, the Commissioner assessed deficiencies and penalties under 26 U.S.C. § 6662(a). Paul Barnhart became executor of Irvin Barnhart's estate upon his death in 2015.

Although it vacated the Commissioner's assessment against BRC, the tax court affirmed those against the Barnharts, rejecting their position that "BRC was nothing more than a 'joint interest accounting agent'", while the brothers were the actual owners of the cattle. Despite the Barnharts' claiming BRC was only an accounting agent, the tax court found BRC's "overall business purpose [was] to *manage* the cattle operation". (Emphasis added.) The tax court found BRC held itself out as owning the cattle and exercised "significant control" over them by, *inter alia*, buying and selling cattle in its own name, paying expenses, paying employees, maintaining insurance policies in its own name, and distributing net proceeds from sales to the two shareholders, Paul and Irvin Barnhart.

Citing *Moline Properties v. Commissioner*, 319 U.S. 436, 438–39 (1943), the tax court stated: "The Barnhart brothers . . . chose to do business using a separate corporate entity; they benefited from that choice, e.g., limited liability; therefore, they may not disregard the corporation whenever it is beneficial for them to do so". The tax court reasoned the cattle and the resulting losses from the cattle operation were, therefore, BRC's for tax purposes.

The tax court also affirmed the Commissioner's accuracy-related penalties under 26 U.S.C. § 6662(a) for substantial understatement of tax liability, and negligence or disregard for the regulations. In doing so, the tax court rejected the Barnharts' substantial-authority and reasonable-cause defenses.

No. 16-60834

II.

The Barnharts contend the tax court erred in ruling they wrongfully reported cattle-operation losses on their personal returns rather than BRC's corporate returns.    Challenging the Commissioner's accuracy-related penalties, the Barnharts claim they reported the losses correctly on their personal returns.    In the alternative, they assert defenses under 26 U.S.C. §§ 6662(d)(2)(B)(i) (penalty reduction when substantial authority supports tax treatment) and 6664(c)(1) (penalty reduction when reasonable-cause and good-faith).

A.

In claiming the tax court erred in ruling BRC should have reported cattle-operation losses on its corporate return, the Barnharts contend that, as individuals, they did not relinquish ownership of the cattle by utilizing BRC to "manage" the cattle operation.  The Barnharts assert the tax court "fail[ed] to apply controlling law", the "controlling law" being cattle ownership is retained although a corporate entity manages the cattle operation.  They cite four cases for this proposition, three of which were not cited or argued to the tax court, as discussed *infra*.

"This Court applies the same standard of review to tax court decisions and district court decisions:  Findings of fact are reviewed for clear error and issues of law are reviewed de novo." *Brinkley v. Comm'r*, 808 F.3d 657, 664 (5th Cir. 2015) (citing *Green v. Comm'r*, 507 F.3d 857, 866 (5th Cir. 2007)).  But, this court "will not disturb [a] judgment based upon an argument presented for the first time on appeal".  *Pluet v. Frasier*, 355 F.3d 381, 385 (5th Cir. 2004). "A party raising an issue on appeal must have raised it before the [trial] court 'to such a degree that the trial court [could] rule on it.'"  *Id.* (quoting *In re Fairchild Aircraft Corp.*, 6 F.3d 1119, 1128 (5th Cir. 1993) *abrogation on other grounds recognized by Wilcox v. Wild Well Control, Inc.*, 794 F.3d 531 (5th Cir.

6

2015)).  Along that line, "[c]iting cases that may contain a useful argument is simply inadequate to preserve that argument for appeal; 'to be preserved, an argument must be pressed, and not merely intimated'".  *In re Fairchild Aircraft Corp.*, 6 F.3d at 1128 (quoting *Hays v. Sony Corp. of Am.,* 847 F.2d 412, 420 (7th Cir. 1988)).

This prohibition against claims not presented to the trial court is not absolute:  a party can "demonstrate 'extraordinary circumstances'" to avoid waiver.  *AG Acceptance Corp. v. Veigel*, 564 F.3d 695, 700 (5th Cir. 2009) (quoting *N. Alamo Water Supply Corp. v. City of San Juan*, 90 F.3d 910, 916 (5th Cir. 1996)).  "Extraordinary circumstances exist when the issue involved is a pure question of law and a miscarriage of justice would result from our failure to consider it." *N. Alamo Water Supply Corp.*, 90 F.3d at 916.  Our court has refused to find extraordinary circumstances where a party's "brief[] is devoid of any argument that a miscarriage of justice would result".  *AG Acceptance Corp.*, 564 F.3d at 700.

The Barnharts did not present their "BRC as manager" claim to the tax court "to such a degree that [it could] rule on it".  *Pluet*, 355 F.3d at 385 (quoting *In re Fairchild*, 6 F.3d at 1128).  Instead, they presented an entirely different and inconsistent theory:  BRC was "nothing more than a 'joint interest accounting agent'" for the brothers' cattle operation.  Concomitantly, they fail to cite any extraordinary circumstances permitting our considering their waived legal theory.

The Barnharts' accounting-agent-only theory was prevalent throughout the tax-court proceedings.  In their pretrial motion, they stated BRC "would hold title *only* as agent for Paul and Irvin (because that is the *only* role [BRC] occupies in the operation of the cattle business)".  (Emphasis added.)  In their opening brief, they stated:  "Paul and Irvin agreed from inception that [BRC] would own neither the cattle nor the ranchland, and would act *only* as agent

No. 16-60834

on behalf of Paul and Irvin", (emphasis added); and "[t]he *only* role [BRC] occupied in the Cattle Operation was as joint interest accounting agent for Paul and Irvin", (emphasis added).

Similarly, in their opening statement, their counsel predicted: "The testimony and documents show that [BRC] is *simply* an *accounting entity* that has always acted on behalf of Paul and Irvin and has never acted on its own account". (Emphasis added.)  Likewise, Paul Barnhart testified he and Irvin Barnhart "made an oral agreement that [BRC] would act *only* as our agent, it would provide the accounting functions". (Emphasis added.)

By contrast, on appeal, the Barnharts assert the "BRC as manager" theory.  In that regard, they cite four cases as "controlling law" for the proposition that cattle ownership is not relinquished when another entity manages day-to-day cattle operations: *Alexander v. Comm'r*, 194 F.2d 921, 925 (5th Cir. 1952); *Phillips v. United States*, 193 F.2d 132, 134 (5th Cir. 1951); *Alexander v. Comm'r*, 190 F.2d 753, 755 (5th Cir. 1951); *Jones Livestock Feeding Co. v. Comm'r*, 26 T.C. Memo. 1967-57, 1967 WL 789.  Curiously, they criticize the tax court for "contraven[ing] the controlling *line of cases* for deciding who owns cattle for federal income tax purposes". (Emphasis added.) However, as discussed *infra*, they failed to present this "controlling line of cases" to the tax court so that it could make its decision in the light of them.

The Barnharts' accounting-agent-only and "BRC as manager" theories are inconsistent, to say the least.  In tax court, for the "agent" theory, they asserted BRC performed only accounting, shifting money behind the scenes: "the Cattle Operation's joint interest accounting system [functioned] by paying expenses and accepting income on Paul and Irvin's behalf and then promptly passing the income and expenses on to them".  They cited the six-factor test from *Commissioner v. Bollinger*, 485 U.S. 340, 346–47 (1988), and *National Carbide Corp. v. Commissioner*, 336 U.S. 422, 435–36 (1949), claiming BRC

8

was merely a corporate agent, and contending, *inter alia*: "[BRC] automatically transmits all the ranch income it receives to Paul and Irvin monthly"; and "[BRC]'s sole business purpose is carrying on the normal duties of an agent. Its *only* activities are collecting and paying funds and performing administrative tasks on behalf of its principals". (Emphasis added.)

Those six factors from *Bollinger* do not appear in the Barnharts' brief here. Instead, they rely on their four "manager" cases and alter their facts: "Just like the cattle managers in *Alexander I* and *Jones Livestock*, here, BRC fed and worked the cattle with the cattle owners' consent". On appeal, the Barnharts adopt the tax court's list of tasks BRC performed, including buying, selling, working, moving, vaccinating, and inventorying cattle. Between the tax court and on appeal, BRC's operations have changed greatly: in tax court it was only moving money, and here it is moving cattle and performing all day-to-day cattle operations, not just accounting.

The Barnharts did cite *Jones Livestock* to the tax court, providing what can only be liberally construed as a glancing blow to their "BRC as manager" theory in a parenthetical citation. The Barnharts' tax-court proceeding consisted of a full trial, complete with opening statements and closing arguments, pretrial briefs, simultaneous opening briefs, and simultaneous closing briefs; but the Barnharts' "BRC as manager" theory was never presented to the tax court. It goes without saying that one parenthetical citation does not present a legal theory "to such a degree that the trial court [could] rule on it". *Pluet*, 355 F.3d at 385 (quoting *In re Fairchild*, 6 F.3d at 1128). (Contrary to the position taken by the concurring opinion, the Barnharts' citation of *Jones Livestock* to the tax court for the proposition that "managing income-producing property on another's behalf is not the same as ownership" does not prevent waiver here, because they never asserted to the tax court that BRC was a *manager* of the cattle. Instead, they continually

No. 16-60834

stated: "The *only* role [BRC] occupied in the Cattle Operation was as joint interest accounting agent" (Emphasis added.)  As shown, *manager* and *agent* are fundamentally different functions in the context of this case.)

B.

In contesting the Commissioner's accuracy-related penalties under 26 U.S.C. § 6662, the Barnharts claim, as discussed *supra*, there was no underreporting because they retained ownership of the cattle, although BRC managed day-to-day cattle operations.  Alternatively, they maintain the tax court erred in rejecting their defenses to the penalties.  First, they assert a substantial-authority defense under 26 U.S.C. § 6662(d)(2)(B)(i), reiterating *Alexander I*, *Phillips*, *Alexander II*, and *Jones Livestock* provide substantial authority for their income-tax reporting.  Second, they assert a reasonable-cause and good-faith defense under 26 U.S.C. § 6664(c)(1), derived from reliance on two prior audits, in 1995 and 2006.

The Internal Revenue Code imposes a 20% penalty in proportion to any underpayment of taxes, if, *inter alia*, the underpayment was (1) caused by the taxpayer's negligence or disregard of regulations, or (2) a substantial understatement.  26 U.S.C. §§ 6662(a), & (b)(1)–(2).  Negligence is defined as "failure to make a reasonable attempt to comply".  26 U.S.C. § 6662(c).  Disregard is defined as "any careless, reckless, or intentional disregard".  *Id.*  An understatement is "substantial" when it exceeds the greater of 10% of the required reporting or $5,000.  26 U.S.C. § 6662(d)(1)(A).

The tax court's determination of negligence and assessment of defenses are factual findings, reviewed for clear error.  *Streber v. Comm'r*, 138 F.3d 216, 219 (5th Cir. 1998); *Brinkley*, 808 F.3d at 668.  "Clear error exists when this court is left with the definite and firm conviction that a mistake has been made."  *Green*, 507 F.3d at 866.  "Additionally, '[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot

10

be clearly erroneous.'" *Brinkley*, 808 F.3d at 664 (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985)). But, when the facts are not in issue, "whether a taxpayer has 'substantial authority' for any tax treatment . . . is a legal question reviewed de novo". *Stanford v. Comm'r*, 152 F.3d 450, 455 (5th Cir. 1998) (citing *Westbrook v. Comm'r*, 68 F.3d 868, 874, 881–82 (5th Cir. 1995); *Little v. Comm'r*, 106 F.3d 1445, 1449 (9th Cir.1997)).

As reflected above, taxpayers may assert defenses to these penalties: a substantial-authority defense and a reasonable-cause and good-faith defense. Regarding the former, an understatement of taxes is reduced to the extent "there is or was substantial authority for such [tax] treatment". 26 U.S.C. § 6662(d)(2)(B)(i).

The substantial-authority defense is law-based, and requires authority in the form of a code section, regulation, case, or certain IRS administrative pronouncements substantiating the taxpayer's position. Treas. Reg. § 1.6662–4(d)(3)(iii). The defense is applicable when "the weight of the authorities supporting the [taxpayer's] treatment is substantial in relation to the weight of authorities supporting contrary treatment". *NPR Invs., L.L.C. ex rel. Roach v. United States*, 740 F.3d 998, 1012 (5th Cir. 2014) (citing Treas. Reg. § 1.6662–4(d)(3)(i)).

A separate defense to penalties exists to the extent there was "reasonable cause for" the underpayment of taxes and the taxpayers acted in good faith. 26 U.S.C. § 6664(c)(1); *NPR Invs., LLC*, 740 F.3d at 1014–15. "No penalty shall be imposed under section 6662 or 6663 with respect to any portion of an underpayment if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion." 26 U.S.C. § 6664(c)(1). In contrast to the substantial-authority defense, the reasonable-cause good-faith defense is fact based. Treas. Reg. § 1.6664–4(b)(1).

11

No. 16-60834

The Barnharts, of course, bear the burden of proving their reasonable-cause and good-faith defense. *Brinkley*, 808 F.3d at 668.

1.

The Barnharts assert that, because, under *Alexander I*, *Phillips*, *Alexander II*, and *Jones Livestock*, they correctly reported losses for the cattle, substantial authority supported their tax position. But, as discussed, the Barnharts did not present their "BRC as manager" theory to the tax court; therefore, they cannot now rely on those cases for their substantial-authority defense.

In addition, the tax court noted the Barnharts did not "articulate a substantial authority argument other than referring to their reliance on prior audits, which is also their [position] for having acted with reasonable cause and in good faith". Because prior audits were the only "authority" on which the Barnharts relied, the tax court commented that "there appears to be no authority supporting [the Barnharts'] tax treatment". As noted *supra*, prior audits are not the type of legal authority required for the substantial-authority defense. Treas. Reg. § 1.6662–4(d)(3)(iii). Because the Barnharts presented the tax court no authority within the meaning of 26 U.S.C. § 6662(d)(2)(B), the tax court did not err in denying their substantial-authority defense.

2.

The Barnharts assert they had reasonable cause to report their income from their cattle operation on their personal returns and acted in good faith in so doing, because, as noted above, they relied on two prior audits. The IRS conducted two audits tangentially related to the Barnharts' tax liability for the years in question: one of Barnhart Co. in 1995 (Paul Barnhart, Sr.'s, corporation); and the other of Irvin Barnhart in 2006. In both instances, the IRS imposed no deficiencies or penalties, issuing no-change letters.

12

It was not clearly erroneous for the tax court to find the prior audits, alone, could not provide reasonable cause, because the audits were of different entities and reflected dissimilar tax treatment of the cattle operation. The 1995 audit of Barnhart Co. concerned a corporation handling a much broader spectrum of the Barnhart family businesses than BRC; the 2006 audit was only of Irvin Barnhart.

In addition, the tax court found, and the record supports, that "notable differences in tax reporting" between the prior audits and the instant audits "undermine [the Barnharts'] position". For example, Barnhart Co. reported considerable income in 1994 ($775,000), but BRC reported little income in 2012–13 ($7,631 and $2, respectively).

As noted by the tax court, the reasonable-cause and good-faith defense is assessed "on a case-by-case basis, taking into account all pertinent facts and circumstances". *Brinkley*, 808 F.3d at 669 (citing Treas. Reg. §1.6664–4(b)(1)). Because the defense is factor based, prior audits are but one factor in the reasonable-cause and good-faith defense. *See id.* The most important factor is the taxpayers' good-faith efforts in assessing tax liability. *Id.*

The tax court found the Barnharts were "savvy businessmen", experienced in complex business entities, yet they undertook no genuine attempt to determine the correctness of their income-tax reporting. The record reflects the Barnharts showed only their tax treatment of the cattle operation was longstanding, not that it was correct. Because the record supports the tax court's ruling regarding the Barnharts' reasonable-cause and good-faith defense, those findings were not clearly erroneous.

## III.

For the foregoing reasons, the decisions against the Barnharts are AFFIRMED.

No. 16-60834

JAMES L. DENNIS, Circuit Judge, concurring in part and concurring in the judgment:

I write separately because I respectfully do not agree that the Barnharts' principal argument on appeal is materially different from the argument they made before the tax court. In their briefing before the tax court, the Barnharts argued that they, not BRC, owned the cattle for tax purposes and that even if BRC technically owned the cattle, it did so as an agent of the Barnharts. With respect to the issue of ownership, the Barnharts asserted that they owned the cattle, pointing to purported indicia of ownership and arguing that the Commissioner's contention that BRC "managed" the cattle did not defeat the Barnharts' assertion of ownership. Among other things, they cited *Jones Livestock Feeding Co. v. Commissioner*, 26 CCH T.C. Mem. 306, 1967 WL 789 (T.C. 1967), for the proposition that managing income-producing property on another's behalf is not the same as ownership of the income-producing property. The Barnharts' discussion of, and comparison to, *Jones* in their opening brief in the tax court makes it evident that the Barnharts argued below that they owned the cattle, irrespective of BRC's actions. That is the same argument they are advancing on appeal, notwithstanding their citation to additional authorities or express abandonment of the agency theory. I therefore would not resolve this issue on the ground that the Barnharts have forfeited their only argument.

Nonetheless, I concur in the judgment as to Part II.A. of the opinion, as I see no clearly erroneous factual determination or reversible legal error in the tax court's conclusion that BRC, not the Barnharts, owned the cattle for tax purposes. I also concur in the conclusion in Part II.B.1. that the Barnharts forfeited their substantial authority argument, as they failed to bring the authorities cited on appeal to the attention of the tax court. I otherwise concur in full.