# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 28, 2021

Lyle W. Cayce
Clerk

No. 20-61139

COLONY INSURANCE COMPANY,

*Plaintiff—Appellee*,

*versus*

BRANDON KEON WRIGHT, ON BEHALF OF THE WRONGFUL
DEATH BENEFICIARIES OF MARION EARL WRIGHT; V & B
INTERNATIONAL, INCORPORATED,

*Defendants—Appellants*,

_____

BRANDON KEON WRIGHT, ON BEHALF OF THE WRONGFUL
DEATH BENEFICIARIES OF MARION E. WRIGHT, DECEASED,

*Plaintiff—Appellant*,

*versus*

COLONY INSURANCE COMPANY,

*Defendant—Third Party Plaintiff-Appellee*,

*versus*

V & B INTERNATIONAL, INCORPORATED,

*Third Party Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 5:19-CV-88
USDC No. 5:20-CV-43

Before ELROD, SOUTHWICK, and COSTA, *Circuit Judges*.

LESLIE H. SOUTHWICK, *Circuit Judge*:

The district court issued a declaratory judgment that an automobile driver's death was not covered by the terms of the defendant insurance company's policy. The wrongful-death beneficiaries of the driver appeal, claiming that the driver's death was covered under the policy. We AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

Marion Wright was driving his personal vehicle to a logging site in Claiborne County, Mississippi on the morning of January 31, 2018. As Wright drove by a sawmill owned by V & B International, Inc., he collided with the sawmill's metal gate that had swung out across the road. Wright suffered multiple traumatic injuries and died at the scene.

Prior to Wright's death, V & B had purchased a commercial general liability insurance policy from Colony Insurance Company. The policy provides coverage for bodily injury and property damage suffered on V & B's premises during the coverage period. Section 2.g of the policy, though, excludes coverage for " 'bodily injury' or 'property damage' arising out of the ownership, maintenance, use, or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any insured." Further, an endorsement titled the "absolute auto exclusion" purports to replace Section 2.g and excludes " 'bodily injury' or 'property

damage' arising directly or indirectly out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft."

On February 2, 2018, Wright's wrongful-death beneficiaries notified Colony of their potential claims under V & B's policy. On February 27, 2018, Colony contacted V & B to deny coverage under the absolute auto exclusion. About three weeks later, the wrongful-death beneficiaries sued V & B in the Circuit Court of Claiborne County, Mississippi. On August 30, 2019, counsel for Wright's beneficiaries notified Colony that they had compromised their claims against V & B and demanded coverage. The state court entered a final judgment on September 17, 2019, explaining that V & B settled with Wright's beneficiaries for $900,000, to be collected "only against applicable insurance proceeds, if any."

On September 19, 2019, Colony filed this action in the United States District Court for the Southern District of Mississippi, requesting a declaration that it had no liability under the policy for Wright's death. On October 28, 2019, the wrongful-death beneficiaries sued Colony in state court seeking a declaratory judgment regarding the policy. Colony removed that action, which was consolidated with the action for declaratory relief. All parties moved for summary judgment. The district court granted summary judgment for Colony, concluding that the policy unambiguously excludes coverage for any injury arising from an automobile accident, regardless of the car's ownership.

## DISCUSSION

We review a grant of summary judgment *de novo*, using the same standard a district court is to apply. *Bolton v. City of Dallas*, 472 F.3d 261, 263 (5th Cir. 2006). The moving party has the burden to show the absence of a genuine dispute of material fact. *Stearns Airport Equip. Co., Inc. v. FMC Corp.*, 170 F.3d 518, 521 (5th Cir. 1999). We view all evidence in the light

most favorable to the non-moving parties, drawing all reasonable inferences in their favor. *Bolton*, 472 F.3d at 261.

This diversity action is governed by Mississippi substantive law. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). When interpreting an insurance policy under Mississippi law, courts "look at the policy as a whole, consider all relevant portions together and, whenever possible, give operative effect to every provision in order to reach a reasonable overall result." *J & W Foods Corp. v. State Farm Mut. Auto. Ins. Co.*, 723 So. 2d 550, 552 (Miss. 1998). An endorsement "controls the policy insofar as it enlarges, modifies or restricts the terms" of the policy. *Camden Fire Ins. Ass'n v. New Buena Vista Hotel Co.*, 24 So. 2d 848, 850 (Miss. 1946).

"[I]f a contract is clear and unambiguous, then it must be interpreted as written." *Corban v. United Servs. Auto. Ass'n*, 20 So. 3d 601, 609 (Miss. 2009) (quoting *United States Fid. & Guar. Co. v. Martin*, 998 So. 2d 956, 963 (Miss. 2008)). Although "ambiguities must be resolved in favor of the non-drafting party," they "do not exist simply because two parties disagree over the interpretation of a policy." *Id.* Instead, "[a]mbiguities exist when a policy can be logically interpreted in two or more ways, where one logical interpretation provides for coverage." *Id.* "Exclusions and limitations on coverage are also construed in favor of the insured." *Id.*

Colony and the wrongful-death beneficiaries do not dispute that Wright's death is an occurrence under the policy that would be covered unless there is an applicable exclusion. Accordingly, the only issue before this court is whether a valid exclusion applies.

No. 20-61139

At the district court and on appeal, the wrongful-death beneficiaries argued that the policy unambiguously covered Wright's death.[1]  Section 2.g of the policy states that the insurance does not apply to:

> "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft *owned or operated by or rented or loaned to any insured.*  Use includes operation and "loading or unloading."

> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

(emphasis added).

This original Section 2.g auto exclusion was replaced by the absolute auto exclusion which "deleted and replaced" the original text with this:

> [This insurance does not apply to] "[b]odily injury" or "property damage" arising directly or indirectly out of the ownership, maintenance, use or entrustment to others of any

---

[1] At the district court, the plaintiffs argued that the accident was covered under what is called the "concurrent-cause doctrine."  Because they do not identify this as an issue on appeal, we do not consider it.  Besides dropping one argument, the wrongful-death beneficiaries seek to raise a new argument on appeal concerning a separate endorsement, "the unmanned aircraft exclusion." The district court never considered that exclusion because briefing on summary judgment did not refer to it.  "[A]rguments not raised before the district court are waived and cannot be raised for the first time on appeal." *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007).  We therefore do not address this separate exclusion.

aircraft, "auto" or watercraft.  Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft.

There is no coverage for injuries arising "directly or indirectly out of the . . . use . . . of any 'auto'" without limiting the provision's effect to the insured's autos.  The policy must be interpreted "as written." *Corban*, 20 So. 3d at 609.  Taking the absolute auto exclusion as written, the policy excludes coverage regardless of any nexus — or lack thereof — between the insured and the auto.

We agree with the district court's well-reasoned and thorough order on summary judgment explaining why there is no coverage for the tragic events underlying this litigation.  AFFIRMED.

No. 20-61139

Gᴇɢɢ Cᴏsᴛᴀ, *Circuit Judge*, concurring:

I fully join the court's opinion, which affirms that the district court correctly decided the issues before it. I also agree that the appellant failed to raise, and thus forfeited, the argument that the insurance policy is ambiguous because of two potentially conflicting endorsements. I write separately to address the often-invoked-but-rarely-applied exception to the forfeiture rule that the appellant urges us to apply and explain why it does not.

The enigmatic exception allows a court to overlook forfeiture when "the newly raised issue concerns a pure question of law and a refusal to consider it would result in a miscarriage of justice." *Volkswagen of Am., Inc. v. Robertson*, 713 F.2d 1151, 1166 (5th Cir. 1983). Almost four decades ago, we said that this exception will "usually" overcome forfeiture when its conditions are met. *Id.*

That is no longer true. Our most recent published decision I could find excusing forfeiture on these grounds is more than a decade old. *See AG Acceptance Corp. v. Veigel*, 564 F.3d 695, 701 (5th Cir. 2009). Although the exception seems like a relic of an era more forgiving of forfeiture, it is still part of our jurisprudence. *Jacobs v. Nat'l Drug Intel. Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008) (noting that "one panel of our court may not overturn another panel's decision" absent a change in law by the Supreme Court, our *en banc* court, or Congress).

With the exception still on the books, the question becomes when we should apply it. A panel of this court recently noted the seeming arbitrariness of the exception, warning that courts "must be on guard for the risk of judicial bias when it comes to discretionary practices such as addressing forfeited issues." *Rollins v. Home Depot USA*, 8 F.4th 393, 398 (5th Cir. 2021). There is a difference, however, between ad-hoc "all things considered" discretion and discretion guided by the background rationales underlying certain rules.

7

Frederick Schauer, *Exceptions*, 58 U. Chi. L. Rev. 871, 895–97 (1991) (distinguishing between the two). The latter—guided discretion—is standard fare in many doctrines that require judges to exercise judgment. *See* Henry J. Friendly, *Indiscretion About Discretion*, 31 Emory L.J. 747, 784 (1982) ("[D]iscretionary choices are not left to a court's 'inclination, but to its judgment; and its judgment is to be guided by sound legal principles.'" (quoting *United States v. Burr*, 25 F. Cas. 30, 35 (C.C. Va. 1807) (Marshall, C.J.))).

The few cases from the last two decades in which we invoked the "pure question of law and miscarriage of justice" exception provide a clue to help guide our discretion in this area. We overlooked forfeiture when a plaintiff argued for the first time on appeal that the Prison Litigation Reform Act's exhaustion requirement does not apply to former prisoners. *Bernal v. Bexar County*, 757 F. App'x 316, 318–19 (5th Cir. 2018) (unpublished). Considering the newly raised issue was justified because our caselaw had already endorsed the plaintiff's plain reading of the statute. *Id.* at 320 (citing *Janes v. Hernandez*, 215 F.3d 541 (5th Cir. 2000)). Similarly, because our precedent already held that a statute barred attorneys' fees, we excused a party's failure to so argue in the district court. *AG Acceptance Corp.*, 564 F.3d at 701 (citing *Utica Lloyd's of Tex. v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998)). In both cases, an opinion from our court already recognized the legal principle that was belatedly invoked on appeal. Finding the issue forfeited would have resulted in a decision contrary to binding precedent and the laws the legislatures had enacted.

One of the keys to understanding the exception, then, is the "pure" modifier to the "question of law" element. Most appeals will involve some questions of law. The issue in this case—how to interpret a contract—is a legal question subject to *de novo* review. But such a question of law is not necessarily, or even usually, the same as a *pure* question of law. *See Rollins*, 8

F.4th at 398 (observing that whether a material fact dispute exists to preclude summary judgment—a legal question we review *de novo*—is "plainly not a pure question of law"). Interpreting a contract requires us to do more than read a case or statute. We must inspect something in the record: the contract itself. And if the contract turns out to be ambiguous, we may have to dive into extrinsic evidence. Once we start dissecting the record, we find ourselves exactly where the forfeiture rule says we should not be—deciding issues based on inadequately developed facts. *See City of Waco v. Bridges*, 710 F.2d 220, 228 (5th Cir. 1983). A *pure* question of law thus exists "when the unpreserved issue is completely detached from the facts." Andrey Spektor & Michael A. Zuckerman, *Ferrets and Truffles and Hounds, Oh My: Getting Beyond Waiver*, 18 Green Bag 77, 88 (2014).

It is telling that the two cases from recent decades finding this complete detachment from the facts involved issues of statutory interpretation. *See AG Acceptance Corp.*, 564 F.3d at 701; *Bernal*, 757 F. App'x at 319. If these examples are representative, then the pure question of law exception may largely overlap with another exception to the preservation requirement: forfeiture does not apply when the court is interpreting a statute. *McMillen v. New Caney Indep. Sch. Dist.*, 939 F.3d 640, 647 n.4 (5th Cir. 2019) (quoting *Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1353 (2015)). Put another way, what a lawyer argues cannot change what the legislature wrote.

This review of our caselaw applying the "pure question of law plus miscarriage of justice" exception shows that the first requirement is missing here. The appellant's argument cannot be resolved solely by reading a court opinion or the words of a statute. The ambiguity claim instead requires examining the insurance policy and endorsements that make up the record of this case (and perhaps more if extrinsic evidence is relevant). As a result, the unpreserved ambiguity argument is forfeited.